GULF OIL CO. ET AL. v. BERNARD ET AL.

No. 80–441. Argued March 30, 1981—Decided June 1, 1981

Powell, J., delivered the opinion for a unanimous Court.

*Wm. G. Duck* argued the cause for petitioners. With him on the briefs were *Susan R. Sewell* and *Carl A. Parker.*

*Jack Greenberg* argued the cause for respondents. With him on the brief were *Bill Lann Lee, Barry L. Goldstein,* and *Ulysses Gene Thibodeaux.*

*Deputy Solicitor General Wallace* argued the cause for the United States et al. as *amici curiae* urging affirmance. With him on the brief were *Solicitor General McCree, Acting Assistant Attorney General Turner, Harlon L. Dalton, Jessica Dunsay Silver, Carol E. Heckman,* and *Leroy D. Clark.**

---

*Stuart Rothman* and *George C. Smith* filed a brief for Hudson Pulp and Paper Corp. as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed by *Arthur B. Spitzer*

JUSTICE POWELL delivered the opinion of the Court.

This is a class action involving allegations of racial discrimination in employment on the part of petitioners, the Gulf Oil Co. (Gulf) and one of the unions at its Port Arthur, Tex., refinery. We granted a writ of certiorari to determine the scope of a district court's authority to limit communications from named plaintiffs and their counsel to prospective class members, during the pendency of a class action. We hold that in the circumstances of this case the District Court exceeded its authority under the Federal Rules of Civil Procedure.

I

In April 1976, Gulf and the Equal Employment Opportunity Commission (EEOC) entered into a conciliation agreement involving alleged discrimination against black and female employees at the Port Arthur refinery. Gulf agreed to cease various allegedly discriminatory practices, to undertake an affirmative-action program covering hiring and promotion, and to offer backpay to alleged victims of discrimination based on a set formula. Gulf began to send notices to the 643 employees eligible for backpay, stating the exact amount available to each person in return for execution within 30 days of a full release of all discrimination claims dating from the relevant time period.[1]

Approximately one month after the signing of the concilia-

and *Kenneth J. Guido, Jr.*, for the American Civil Liberties Union Fund of the National Capital Area et al.; by *Mayo L. Coiner* and *Harry M. Philo* for the Association of Trial Lawyers of America; by *Richard F. Watt* and *Martha A. Mills* for the Chicago Council of Lawyers; and by *William F. Kaspers* and *John D. Buchanan, Jr.*, for the Tallahassee Memorial Hospital.

[1] The letter stated that "[b]ecause this offer is personal in nature, Gulf asks that you not discuss it with others." It added, however, that those who did not understand the offer could request that a company official arrange an interview with a Government representative. Brief for United States et al. as *Amici Curiae* 1a.

tion agreement, on May 18, 1976, respondents filed this class action in the United States District Court for the Eastern District of Texas, on behalf of all black present and former employees, and rejected applicants for employment, at the refinery.[2] They alleged racial discrimination in employment and sought injunctive, declaratory, and monetary relief, based on Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e *et seq.,* and the Civil Rights Act of 1866, 42 U. S. C. § 1981. The defendants named were Gulf and Local 4–23 of the Oil, Chemical, and Atomic Workers International Union. Plaintiffs' counsel included three lawyers from the NAACP Legal Defense and Education Fund.[3] Through this lawsuit, the named plaintiffs sought to vindicate the alleged rights of many of the employees who were receiving settlement offers from Gulf under the conciliation agreement.

On May 27, Gulf filed a motion in the District Court seeking an order limiting communications by parties and their counsel with class members. An accompanying brief described the EEOC conciliation agreement, asserting that 452 of the 643 employees entitled to backpay under that agreement had signed releases and been paid by the time the class action was filed. Gulf stated that after it was served in the case, it ceased sending backpay offers and release forms to class members. It then asserted that a lawyer for respond-

---

[2] Three of the named plaintiffs, Bernard, Brown, and Johnson, had filed individual charges before the EEOC in 1967. The Commission pursued conciliation efforts based on these charges until February 1975 when these three persons received letters stating that Gulf and the union no longer wished to entertain conciliation discussions. The letters stated that the three could request "right to sue" letters at any time, and would have 90 days from the receipt of such letters to file suit under Title VII. Bernard and Brown received notices of right to sue from the Commission on June 11, 1976.

The conciliation agreement between Gulf and the EEOC was premised on a separate charge filed against Gulf by the Commission itself in 1968.

[3] Two other attorneys also assisted in the representation.

ents, Ulysses Gene Thibodeaux, had attended a meeting of 75 class members on May 22, where he had discussed the case and recommended that the employees not sign the releases sent under the conciliation agreement. Gulf added that Thibodeaux reportedly had advised employees to return checks they already had received, since they could receive at least double the amounts involved through the class action.

The court entered a temporary order prohibiting all communications concerning the case from parties or their counsel to potential or actual class members. The order listed several examples of communications that were covered, but stated that it was not limited to these examples. It was not based on any findings of fact.

On June 8, Gulf moved for a modification of the order that would allow it to continue mailings to class members, soliciting releases in exchange for the backpay amounts established under the conciliation agreement. Respondents filed a brief in opposition, arguing that the ban on their communications with class members violated the First Amendment. On June 11, the court heard oral argument, but took no evidence. Gulf then filed a supplemental memorandum proposing that the court adopt the language of "Sample Pretrial Order No. 15" in the Manual for Complex Litigation App. § 1.41.[4] Respondents replied with another memorandum, accompanied by sworn affidavits of three lawyers. In these affidavits counsel stated that communications with class mem-

---

[4] The Manual, containing an important compilation of suggested procedures for handling complex federal cases, was published under the supervision of a distinguished group of federal judges. It is printed in full in Part 2 of 1 J. Moore, J. Lucas, H. Fink, D. Weckstein, & J. Wicker, Moore's Federal Practice (1980).

In its proposed order, Gulf added language allowing it to continue paying backpay and obtaining releases under the conciliation agreement. It suggested that the Clerk of the Court should send a notice to class members informing them that they had 45 days in which to decide to accept the Gulf offer.

bers were important in order to obtain needed information about the case and to inform the class members of their rights. Two affidavits stated that lawyers had attended the May 22 meeting with employees and discussed the issues in the case but neither advised against accepting the Gulf offer nor represented that the suit would produce twice the amount of backpay available through the conciliation agreement.

On June 22, another District Judge issued a modified order adopting Gulf's proposal.[5] This order imposed a complete

---

[5] The June 22 order stated, in part:

"In this action, all parties hereto and their counsel are forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addresses by order of this Court. Any such proposed communication shall be presented to this Court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval by this Court of the proposed communication. The communications forbidden by this order include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses and agreements to pay fees and expenses from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph (b)(3) of Rule 23, F. R. Civ. P.; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes and effects of the class action, and of any actual or potential Court orders therein which may create impressions tending, without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice. The obligations and prohibitions of this order are not exclusive. All other ethical, legal and equitable obligations are unaffected by this order.

"This order does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business or in the performance of the duties of public office or agency (such as the Attorney General) which do not have the effect of soliciting represen-

ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court. It gave examples of forbidden communications, including any solicitation of legal representation of potential or actual class members, and any statements "which may tend to misrepresent the status, purposes and effects of the class action" or "create impressions tending without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice." The order exempted attorney-client communications initiated by the client, and communications in the regular course of business. It further stated that if any party or counsel "assert[ed] a constitutional right to communicate . . . without prior restraint," and did so communicate, he should file with the court a copy or summary of the communication within five days. The order, finally, exempted communications from Gulf involving the conciliation agreement and its settlement process.

---

tation by counsel, or misrepresenting the status, purposes or effect of the action and orders therein.

"If any party or counsel for a party asserts a constitutional right to communicate with any member of the class without prior restraint and does so communicate pursuant to that asserted right, he shall within five days after such communication file with the Court a copy of such communication, if in writing, or an accurate and substantially complete summary of the communication if oral."

This section of the order was drawn word-for-word from the Manual for Complex Litigation App. § 1.41. The order then went on to authorize Gulf to continue with the settlement process under the terms of the conciliation agreement, and to direct the Clerk of Court to send the notice described in n. 4, *supra*. A paragraph near the end of the order then reiterated the proscription on communications:

"(8) [It is ordered that] any further communication, either direct or indirect, oral or in writing (other than those permitted pursuant to paragraph (2) above) from the named parties, their representatives or counsel to the potential or actual class members not formal parties to this action is forbidden."

The court made no findings of fact and did not write an explanatory opinion. The only justification offered was a statement in the final paragraph of the order:

"It is Plaintiff's [*sic*] contention that any such provisions as hereinbefore stated that limit communication with potential class members are constitutionally invalid, citing *Rodgers* v. *United States Steel Corporation,* 508 F. 2d 152 (3rd Cir. 1975), *cert. denied,* 420 U. S. 969 (1975). This Court finds that the *Rodgers* case is inapplicable, and that this order comports with the requisites set out in the *Manual for Complex Litigation . . .* which specifically exempts constitutionally protected communication when the substance of such communication is filed with the Court."

On July 6, pursuant to the court's order respondents submitted for court approval a proposed leaflet to be sent to the class members.[6] This notice urged the class to talk to a law-

---

[6] The proposed notice stated:

"ATTENTION BLACK WORKERS OF GULF OIL

"The Company has asked you to sign a release. If you do, you may be giving up very important civil rights. It is important that you fully understand what you are getting in return for the release. *IT IS IMPORTANT THAT YOU TALK TO A LAWYER BEFORE YOU SIGN.* These lawyers will talk to you *FOR FREE:* [names and addresses of respondents' counsel].

"These lawyers represent six of your fellow workers in a lawsuit titled *Bernard* v. *Gulf Oil Co.,* which was filed in Beaumont Federal Court on behalf of all of you. This suit seeks to correct fully the alleged discriminatory practices of Gulf.

"Even if you have already signed the release, talk to a lawyer. You may consult another attorney. If necessary, have him contact the above-named lawyers for more details. All discussions will be kept strictly confidential.

"AGAIN, IT IS IMPORTANT THAT YOU TALK TO A LAWYER. Whatever your decision might be, we will continue to vigorously prosecute this lawsuit in order to correct all the alleged discriminatory practices at Gulf Oil."

yer before signing the releases sent by Gulf. It contained the names and addresses of respondents' counsel and referred to this case. Respondents argued that the notice was constitutionally protected and necessary to the conduct of the lawsuit. Gulf opposed the motion. The court waited until August 10 to rule on this motion. On that date, 2 days after the expiration of the 45-day deadline established by the court for acceptance of the Gulf offer by class members,[7] the court denied the motion in a one-sentence order containing no explanation. As a result, the named plaintiffs and their counsel were prevented from undertaking any communication with the class members prior to the deadline.

On appeal from a subsequent final order,[8] respondents argued that the limitations on communications imposed by the District Court were beyond the power granted the court in Federal Rule of Civil Procedure 23 (d) and were unconstitutional under the First Amendment. A divided panel of the United States Court of Appeals for the Fifth Circuit affirmed the District Court. 596 F. 2d 1249 (1979).

The panel majority reasoned that orders limiting communications are within the extensive powers of district courts in managing class litigation. It held that the District Court could easily have concluded that the need to limit communications outweighed any competing interests of respondents, especially since the order merely required prior approval of communications, rather than prohibiting them altogether.

---

[7] This order had effected a substantial change in the procedure mandated by the conciliation agreement, which provided that "failure on the part of any member to respond within thirty days shall be interpreted as *acceptance* of back pay" (emphasis added). App. 59.

[8] On January 11, 1977, the District Court granted summary judgment to petitioners, dismissing the complaint as untimely. On appeal, respondents argued that their claims had been presented in timely fashion. Both the Fifth Circuit panel, 596 F. 2d 1249, 1254–1258 (1979), and the en banc court, 619 F. 2d 459, 463 (1980), held for respondents on this issue and therefore ordered a remand for further proceedings.

*Id.,* at 1259–1261. Turning to respondents' First Amendment argument, the majority held that the order was not a prior restraint because it exempted unapproved communications whenever the parties or their counsel asserted a constitutional privilege in good faith. The court also found no serious "chill" of protected speech. *Id.,* at 1261–1262.

Judge Godbold wrote a dissenting opinion arguing that the order limiting communications was not "appropriate" within the meaning of Federal Rule of Civil Procedure 23 (d) because the court did not make any finding of actual or imminent abuse. He reasoned that Gulf's unsworn allegations of misconduct could not justify this order, and that a court could not impose such a limitation routinely in all class actions. *Id.,* at 1267–1268. He added that it was improper in this context for the District Court to encourage compliance with the conciliation agreement through such an order. *Id.,* at 1269–1270. Judge Godbold also found that the order violated respondents' First Amendment rights. *Id.,* at 1270–1275.

The Fifth Circuit granted a rehearing en banc, and reversed the panel decision concerning the order limiting communications. 619 F. 2d 459 (1980). A majority opinion joined by 13 judges held that the order was an unconstitutional prior restraint on expression accorded First Amendment protection.[9] The court held that there was no sufficient particularized showing of need to justify such a restraint, that the restraint was overbroad, and that it was not accompanied by the requisite procedural safeguards. *Id.,* at 466–478. Eight

---

[9] In holding that the order restricted protected speech, the court relied both on cases involving essentially political litigation, *NAACP* v. *Button,* 371 U. S. 415 (1963); *In re Primus,* 436 U. S. 412 (1978), and on cases that may be closer to the present case, involving collective efforts to gain economic benefits accorded a specific group of persons under federal law, *United Transportation Union* v. *Michigan Bar,* 401 U. S. 576 (1971); *Mine Workers* v. *Illinois Bar Assn.,* 389 U. S. 217 (1967); *Railroad Trainmen* v. *Virginia State Bar,* 377 U. S. 1 (1964).

judges concurred specially on the theory that it was unnecessary to reach constitutional issues because the order was not based on adequate findings and therefore was not "appropriate" under Federal Rule of Civil Procedure 23 (d). *Id.,* at 478, 481. One judge would have affirmed the District Court.

We granted a writ of certiorari to review the question whether the order limiting communications was constitutionally permissible. 449 U. S. 1033 (1980).

## II

Rule 23 (d) of the Federal Rules of Civil Procedure provides: "(d) ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this rule applies, the court may make appropriate orders: . . . (3) imposing conditions on the representative parties or on intervenors . . . [and] (5) dealing with similar procedural matters." [10] As the concurring judges below recognized, 619 F. 2d, at 478, 481, prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision. See *Ashwander* v. *TVA,* 297 U. S. 288, 347 (1936) (Brandeis, J., concurring). As a result, in this case we first consider the authority of district courts under the Federal Rules to impose sweeping limitations on communications by named plaintiffs and their counsel to prospective class members.

More specifically, the question for decision is whether the limiting order entered in this case is consistent with the general policies embodied in Rule 23, which governs class actions in federal court. Class actions serve an important function in our system of civil justice.[11] They present, how-

---

[10] Rule 83 provides a more general authorization to district courts, stating that in "all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."

[11] Respondents in this case were performing the customary role of named plaintiffs, who seek to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in

ever, opportunities for abuse as well as problems for courts and counsel in the management of cases.[12]  Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.  But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules.  *Eisen* v. *Carlisle & Jacquelin,* 417 U. S. 156 (1974).  Moreover, petitioners concede, as they must, that

which the optimum result might be more than consumed by the cost." *Deposit Guaranty Nat. Bank* v. *Roper,* 445 U. S. 326, 338 (1980).  Rule 23 expresses "a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit." *Rodgers* v. *United States Steel Corp.,* 508 F. 2d 152, 163 (CA3), cert. denied, 423 U. S. 832 (1975).

Although traditional concerns about "stirring up" litigation remain relevant in the class-action context, see n. 12, *infra,* such concerns were particularly misplaced here.  Respondents were represented by lawyers from the NAACP Legal Defense and Education Fund—a nonprofit organization dedicated to the vindication of the legal rights of blacks and other citizens.  See *In re Primus, supra,* at 422, 426–431 (distinguishing, with respect to First Amendment protections, between solicitation of clients intended to advance political objectives and solicitation of clients for pecuniary gain).

[12] The class-action problems that have emerged since Rule 23 took its present form in 1966 have provoked a considerable amount of comment and discussion.  See, *e. g.,* Manual for Complex Litigation; Developments in the Law: Class Actions, 89 Harv. L. Rev. 1318 (1976); Miller, Problems of Administering Judicial Relief in Class Actions under Federal Rule 23 (b)(3), 54 F. R. D. 501 (1972).

The potential abuses associated with communications to class members are described in *Waldo* v. *Lakeshore Estates, Inc.,* 433 F. Supp. 782 (ED La. 1977).  That court referred, *inter alia,* to the "heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties or counsel to 'drum up' participation in the proceeding." *Id.,* at 790.  The court added that "[u]napproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice." *Id.,* at 790–791.  See also Manual for Complex Litigation App. § 1.41.

exercises of this discretion are subject to appellate review.
Brief for Petitioners 21, n. 15; see *Eisen, supra; Oppenheimer
Fund, Inc.* v. *Sanders,* 437 U. S. 340, 359 (1978).

In the present case, we are faced with the unquestionable
assertion by respondents that the order created at least po-
tential difficulties for them as they sought to vindicate the
legal rights of a class of employees.[13]  The order interfered
with their efforts to inform potential class members of the
existence of this lawsuit, and may have been particularly
injurious—not only to respondents but to the class as a
whole—because the employees at that time were being
pressed to decide whether to accept a backpay offer from
Gulf that required them to sign a full release of all liability
for discriminatory acts.[14]  In addition, the order made it more
difficult for respondents, as the class representatives, to ob-
tain information about the merits of the case from the per-
sons they sought to represent.

Because of these potential problems, an order limiting com-
munications between parties and potential class members
should be based on a clear record and specific findings that
reflect a weighing of the need for a limitation and the poten-
tial interference with the rights of the parties.[15]  Only such

---

[13] See generally Comment, Judicial Screening of Class Action Commu-
nications, 55 N. Y. U. L. Rev. 671, 699–704 (1980); Note, 88 Harv. L.
Rev. 1911, 1917–1920 (1975).

[14] In Title VII, Congress expressed a preference for voluntary settle-
ments of disputes through the conciliation process. *E. g., Alexander* v.
*Gardner-Denver Co.,* 415 U. S. 36, 44 (1974). But, as the en banc ma-
jority stated, it is not appropriate to promote such a policy by restricting
information relevant to the employee's choice:

"The choice between the lawsuit and accepting Gulf's back pay offer and
giving a general release was for each black employee to make.  The court
could not make it for him, nor should it have freighted his choice with
an across-the-board ban that restricted his access to information and ad-
vice concerning the choice." 619 F. 2d, at 477.

[15] As noted *infra,* we do not reach the question of what requirements
the First Amendment may impose in this context.  Full consideration of

a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23.[16]  In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.  As the court stated in *Coles* v. *Marsh,* 560 F. 2d 186, 189 (CA3), cert. denied, 434 U. S. 985 (1977):

> "[T]o the extent that the district court is empowered . . . to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened.  Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties."

## III

In the present case, one looks in vain for any indication of a careful weighing of competing factors.  Indeed, in this respect, the District Court failed to provide any record useful for appellate review.  The court made neither factual findings nor legal arguments supporting the need for this sweeping restraint order.  Instead, the court adopted *in toto* the order suggested by the Manual for Complex Litigation—on

---

the constitutional issue should await a case with a fully developed record concerning possible abuses of the class-action device.

[16] Cf. *In re Halkin,* 194 U. S. App. D. C. 257, 274, 598 F. 2d 176, 193 (1979) ("To establish 'good cause' for a protective order under [Federal Rule of Civil Procedure] 26 (c), '[t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements'") (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, p. 265 (1970)).

the apparent assumption that no particularized weighing of the circumstances of the case was necessary.

The result was an order requiring prior judicial approval of all communications, with the exception of cases where respondents chose to assert a constitutional right. Even then, respondents were required to preserve all communications for submission to the court within five days.[17]   The scope of this order is perhaps best illustrated by the fact that the court refused to permit mailing of the one notice respondents submitted for approval. See *supra*, at 96–97. This notice was intended to encourage employees to rely on the class action for relief, rather than accepting Gulf's offer. The court identified nothing in this notice that it thought was improper and indeed gave no reasons for its negative ruling.

We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order.[18]   Although we do not

---

[17] The order contains a serious ambiguity concerning the response that the court could make if it found no merit in respondents' assertion of a constitutional right with respect to a particular communication. Arguably, this "constitutional" exception was not a realistic option for respondents because they could be exposed to the risk of a contempt citation if the court determined that a communication submitted after-the-fact was not constitutionally protected. See 619 F. 2d, at 471 (referring to "the omissions and ambiguities of the order and possible differing constructions as to when, if at all, one is protected against contempt"). At the very least, parties or their counsel would be required to defend their good faith, at the risk of a contempt citation. Because of this fact, and the practical difficulties of the filing requirement, see *id.*, at 470–471, this exception for constitutionally protected speech did little to narrow the scope of the limitation on speech imposed by the court.

[18] We agree with the Court of Appeals' refusal to give weight to Gulf's unsworn allegations of misconduct on the part of respondents' attorneys: "We can assume that the district court did not ground its order on a conclusion that the charges of misconduct made by Gulf were true. Nothing in its order indicates that it did, and, if it did, such a conclusion would

decide what standards are mandated by the First Amendment in this kind of case, we do observe that the order involved serious restraints on expression. This fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses.

We recognize the possibility of abuses in class-action litigation, and agree with petitioners that such abuses may implicate communications with potential class members.[19] But the mere possibility of abuses does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules. There certainly is no justification for adopting verbatim the form of order recommended by the Manual for Complex Litigation, in the absence of a clear record and specific findings of need. Other, less burdensome remedies may be appropriate.[20] Indeed, in many cases there will be no problem requiring remedies at all.

In the present case, for the reasons stated above, we hold that the District Court abused its discretion.[21] Accordingly, the judgment below is affirmed.

*It is so ordered.*

---

have been procedurally improper and without evidentiary support. Rather the court appears to have acted upon the rationale of the *Manual* that the court has the power to enter a ban on communications in any actual or potential class action as a prophylactic measure against potential abuses envisioned by the *Manual.*" *Id.,* at 466 (footnote omitted).

[19] See n. 12, *supra.*

[20] For example, an order requiring parties to file copies of nonprivileged communications to class members with the court may be appropriate in some circumstances.

[21] In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors. Our decision regarding the need for careful analysis of the particular circumstances is limited to the situation before us—involving a broad restraint on communication with class members. We also note that the rules of ethics properly impose restraints on some forms of expression. See, *e. g.,* ABA Code of Professional Responsibility, DR 7–104 (1980).