Guillermo MARMOL, et al.,
Plaintiffs-Appellants,

v.

Hon. James C. ADKINS, et al.,
Defendants-Appellees.

No. 80–5777.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 8, 1981.

**4.** See, pg. 271, 97 S.Ct. p. 2361, *Caputo, supra.*  **5.** See, pg. 544, *Jacksonville Shipyards, supra.*

Blas Padrino, Coral Gables, Fla., for plaintiffs-appellants.

C. Graham Carothers, Tallahassee, Fla., for defendants-appellees.

Before TUTTLE, RONEY and ANDERSON, Circuit Judges.

TUTTLE, Circuit Judge:

In this class action, former Cuban lawyers now residing in the State of Florida, filed their complaint against the Florida Supreme Court and Board of Bar Examiners charging deprivation of constitutional rights in the conduct of bar examinations in which the class members were unsuccessful. This appeal is from a summary judgment entered by the trial court at a time when the plaintiff class was contending that it had insufficient time for preparation. We do not reach the merits of the case because we find one procedural error that occurred *in limine* which requires that we remand the case for further proceedings.

The complaint was filed in the Southern District of Florida on behalf of two classes: (1) Those persons of Cuban national origin, former members of the bar in Cuba, who had successfully completed the special CALI program of the State of Florida,[1] and then taken, but failed, the Florida Bar ex-

amination; (2) "The client class" consisted of persons of Cuban background, living in Florida, unable to communicate adequately in English, in need of legal services and desiring to use the services of the "applicant class" but unable to do so because of defendants' alleged discriminatory refusal to admit the applicant class members to the Florida Bar.

Shortly after the complaint was filed, the defendants filed a motion for change of venue, asserting that under 28 U.S.C. § 1391(b)[2], this action could be brought only in the Northern District of Florida, because in an action against officials of a state, their "residence" within the contemplation of this statute, is in the district where their duties are performed and office exists. Over the objection of the plaintiffs, the District Court for the Southern District granted the motion and transferred the case to the Northern District of Florida, where all subsequent proceedings were had. Plaintiffs contend that the applicable statute is Section 1392(a) which provides:

Any civil action, not of a local nature, against defendants residing in different districts in the same state, may be brought in any of such districts.

It is to be noted that the motion for change of venue and the action by the court were based on § 1391(b), and not § 1404, which provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The trial court here did not exercise any discretion, as it was permitted to do upon motion for a change of venue under § 1404.

■ We do not consider it necessary to decide whether the defendants' interpretation of § 1391(b) with respect to what con-

---

1. The Cuban American Law Institute program was created to assist persons of Cuban national origin who had graduated from certain Cuban law schools and who had been engaged in the practice of law in Cuba prior to December 31, 1960 to become eligible for admission to the Florida Bar.

2. A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law. 28 U.S.C. § 1391(b).

stitutes "residence" where there are multiple defendants who may be performing their services in places other than at the state capitol is correct and we pretermit a decision on this issue, although *see O'Neill v. Battisti*, 472 F.2d 789 (6th Cir. 1972). We do not reach this question, because the plaintiffs failed to allege the residence of the individual defendants in their complaint. There was nothing before the trial court at the time of the motion for change of venue, except statements by counsel in their opposition to the transfer to the effect that the defendants who where members of the Board of Bar Examiners performed substantial parts of their duties in the Southern District of Florida. This was not supported by affidavit or other evidence. Under these circumstances, we do not consider it appropriate to construe the language with respect to the residence of the defendants as used in §§ 1391 and 1392 of Title 28.

The first action taken by the court in the Northern District upon the docketing of the case was to issue what is known in the Northern District of Florida as Local Rule 3, a gag order, forbidding counsel to communicate with any members of the class other than those by whom he had already been employed without the prior consent of the court.[3] This order is almost precisely the same order that was before the Supreme Court in *Gulf Oil Co. v. Bernard*, —— U.S. ——, 101 S.Ct. 2193, 68 L.Ed.2d 693. There, the Court, affirming the en banc decision of this Court, 619 F.2d 459 (5th Cir. 1980), said:

> In the present case we are faced with the unquestionable assertion by respondents that the order created at least potential difficulties for them as they sought to vindicate the legal rights of a class of employees. The order interfered with their efforts to inform potential class members of the existence of this lawsuit, and ... in addition the order made it more difficult for respondents, as the class representatives, to obtain information about the merits of the case from the persons they sought to represent.
>
> Because of these potential problems, an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing for the need for a limitation and a potential interference with the rights of the parties. Only such a determination can insure that the Court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure,

---

3. The order follows:

In this action, all parties hereto and their counsel are forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addressees by order of this Court. Any such proposed communication shall be presented to this Court in writing with a designation of or description of all addressees and with a motion and proposed order for prior approval by this Court of the proposed communication. The communications forbidden by this order include, but are not limited to, (a) solicitation directly or indirectly of legal representation of potential and actual class members who are not formal parties to the class action; (b) solicitation of fees and expenses from potential and actual class members who are not formal parties to the class action; (c) solicitation by formal parties to the class action of requests by class members to opt out in class actions under subparagraph

(b)(3) of Rule 23, F.R.Civ.P.; and (d) communications from counsel or a party which may tend to misrepresent the status, purposes, and effects of the class action, and of any actual or potential Court orders therein which may create impressions tending, without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice. The obligations and prohibitions of this order are not exclusive. All other actual, legal and equitable obligations are unaffected by this order.

This order does not forbid (1) communications between an attorney and his client or a prospective client, who has on the initiative of the client or prospective client consulted, with, employed or proposed to employ the attorney, or (2) communications occurring in the regular course of business or in the performance of the duties of a public office or agency which do not have the effect of soliciting representations by counsel, or misrepresenting the status, purposes or effect of the action and orders therein.

especially Rule 23. In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances. . . .

In the present case, one looks in vain for any indication of a careful weighing of competing factors. Indeed, in this respect, the district court failed to provide any record useful for appellate review. The court made neither factual findings nor legal arguments supporting the need for this sweeping restraint order. Instead, the court adopted in toto the order suggested by the Manual for Complex Litigation—on the apparent assumption that no particularized weighing of the circumstances of the case is necessary.

The result was an order requiring prior judicial approval of all communications. . . .

We conclude that the imposition of the order was an abuse of discretion. The record reveals no grounds on which the district court could have determined that it was necessary or appropriate to impose this order. Although we do not decide what standards are mandated by the First Amendment in this kind of case, we do observe that the order involved serious restraints on expression. This fact, at minimum, counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses.

—— U.S. at ——, 101 S.Ct. at 2200–2202. Thereupon, the court affirmed the judgment of this Court en banc, which remanded the case to the trial court for further proceedings. The appellees contend that this gag order had an insignificant effect upon the appellants' case, and therefore it would be inappropriate for the case to be sent back. The trouble with this is, as stated by the Court: "The order made it more difficult for respondents, as the class representatives, to obtain information about the merits of the case from the persons they sought to represent." The state parties argue that the answer made by the

plaintiffs to the first set of interrogatories so clearly negated their right to recovery that there was nothing left but a dismissal by summary judgment. The answer which the state parties contend had this effect came about as follows:

Interrogatory:

25. Do Plaintiffs contend that the Defendant members of the Supreme Court of Florida have at any time engaged in any act which was done with the intent of purposely discriminating against the applicant-class?

Answer:

25. Plaintiffs have no knowledge of, and do not contend that Defendant members of the Supreme Court of Florida have ever engaged in any purported intentional discriminating acts motivated by any malice or ill will towards Plaintiffs. However, Plaintiffs contend that the manner in which the system is designed and implemented has a discriminating effect against Plaintiffs because it does not adequately measure their legal skills and ability to practice law while it prevents disproportionate numbers of them from being admitted to the Florida bar.

Interrogatory:

26. Do Plaintiffs contend that the Defendant members of the Florida Board of Bar Examiners have at any time engaged in any act which was done with the intent of purposely discriminating against the applicant-class?

Answer:

26. Plaintiffs would provide the same answer to this question with respect to the members of the Florida Board of Bar Examiners as the answer provided in 25, above, with respect to the Justices of the Supreme Court of Florida.

The argument by the appellees contained in their brief is as follows: "Defendants argued that Plaintiffs' answers to the interrogatories quoted above compelled entry of summary judgment because of Plaintiffs' unequivocable [sic] admission that none of the Defendants had committed any act with

the intention of discriminating against the Plaintiff 'appellant class.'"

■ The answer, of course, does no such thing. It says the plaintiffs did not contend "that Defendant[s] ... have ever engaged in any purposeful intentional discriminating acts *motivated by any malice or ill will towards plaintiffs*." [Emphasis added.] Since under the holding of the Supreme Court in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), the burden on the plaintiffs in a case such as this is to prove by a preponderance of the evidence that the criticized state action is brought about by an intent or purpose to discriminate there is no burden on such a plaintiff to prove that the intent or purpose to discriminate is "motivated by any malice or ill will towards plaintiffs." Thus, it is clear that the answer by the plaintiffs to the interrogatory would not preclude their showing, *if they were able, the existence of* other facts to support their contention of the existence of a purposeful or intentional discrimination. The action of the trial court in forbidding plaintiffs' counsel from communicating with members of the class he sought to represent, of course, made it impossible for him to attempt to find such facts as he may have believed were necessary to support his contention.

■ The extent to which the plaintiffs' counsel was circumscribed in the preparation of his case, and especially the limitation on his actions which might have produced sufficient evidence to have withstood a motion for summary judgment, make it necessary for us to send the case back to the trial court, where the plaintiffs will be freed from such restrictions as the Supreme Court has now said are improper in such a case. After remand, the court can, of course, after giving sufficient time for the plaintiffs' counsel to communicate, and reasonable time to complete discovery if he wishes to do so, with other members of the class, consider all pending motions on the record as it may then stand and make such disposition of it as is proper. Nothing we have said here is to be construed as a holding that there will necessarily be a full trial on the merits. This question remains for consideration by the parties and the trial court after the record is completed with the improper gag order withdrawn.

The judgment is REVERSED and the case is REMANDED to the trial court with instructions that the Local Rule No. 3 be withdrawn from its application to this case and for further proceedings not inconsistent with this opinion.