[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 25, 2009
THOMAS K. KAHN
CLERK

No. 09-11221
Non-Argument Calendar

_____

D. C. Docket No. 07-80829-CV-KLR

DONALD HAMM,
ELLIOT COOK,
RONALD SIMMS,
MARK WAGNER,
MARTHA HARRIS,
TIMOTHY BRIDGES,
DAVID BERMUDEZ,
EDWARD GEIGER, III,
CURTIS CORTIJO,
CHARLES DEPOTTER,
ROBERT ELLISON,
PHILLIP PENDELL,
CHARLES MCNABB,
JAMES MACDONALD,
individually and on behalf persons similarly
situated,
SHAVITZ LAW GROUP, P.A.,

Plaintiffs-Appellants,

ALL PLAINTIFFS, JOE MAHAR, et al.,

Plaintiffs,

versus

TBC CORPORATION,
a Delaware corporation,
TIRE KINGDOM, INC.,
a Florida corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____
(August 25, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

This case stems from a lawsuit brought by six named plaintiffs, on behalf of themselves and others similarly situated, against TBC Corporation and Tire Kingdom, Inc. (collectively "Tire Kingdom"). During the case, the district court sanctioned Shavitz Law Group ("SLG"), counsel for the current and putative opt-in plaintiffs, for impermissibly soliciting clients. SLG appeals this imposition of sanctions, arguing that they are disproportionately broad and excessive. We disagree and therefore affirm the district court's sanctions order.

## I. Facts

This case was brought by six employees of Tire Kingdom as a proposed collective action, seeking overtime compensation allegedly owed to the plaintiffs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et. seq. Forty-six other plaintiffs opted-in the suit. A few months after the case was filed, Tire Kingdom filed a motion seeking court-imposed sanctions against SLG for direct solicitation of putative class members, in violation of Southern District of Florida Local Rule 11.1.C and Florida Rule of Professional Conduct 4-7.4(a). In the motion, Tire Kingdom alleged that SLG impermissibly solicited at least three then current Tire Kingdom employees – Christopher Johnson, Nicholas Kilgore, and Shane Cook – in an attempt to convince them to join the pending lawsuit and have SLG represent them.

SLG conceded that the firm's administrative assistant, Tayara Oliveira, contacted Kilgore and Cook; the firm denied, however, that Oliveira solicited them as clients. Instead, the firm maintained that Oliveria contacted Kilgore and Cook in order to conduct a due diligence investigation, as required by Rule 11 of the Federal Rules of Civil Procedure, before having its client, Matthew Bitner, opt into the lawsuit. The firm did not explain whether or why it contacted Johnson.

The district court heard oral argument on Tire Kingdom's sanctions motion and then referred the matter to a magistrate judge for an evidentiary hearing.

3

Kilgore, Cook, Johnson, and Christopher Blum, Kilgore and Cook's manager at the time of the solicitation calls, testified for Tire Kingdom. Kilgore and Cook, both employees of a Tire Kingdom subsidiary located in Kansas City, Missouri, testified that they received telephone calls on December 15, 2007 from a woman identifying herself as an employee of a law firm. She told Kilgore and Cook that she received their telephone numbers from Bitner and wanted to know if they would be interested in joining a lawsuit against Tire Kingdom. Johnson testified that he received a similar call on December 7, 2007, during which time he was an employee of a Tire Kingdom subsidiary in Shawnee Mission, Missouri, and that once he told the caller that he was not interested in joining the lawsuit, she asked if he knew anyone else who had lost wages. Telephone records confirmed that Kilgore, Cook, and Johnson received telephone calls from SLG on the dates in question. Johnson testified that he did not know Bitner and that the caller did not ask any questions about Bitner. Blum testified that he received a telephone call from Kilgore on December 15, 2007, stating that Bitner was suing Tire Kingdom. Blum stated that other employees in his store informed him that they had received calls regarding the same issue that was reported by Kilgore.

Oliveira and Gregg Shavitz, the firm's sole partner, testified for SLG. Shavitz testified that employees received extensive training and that administrative

assistants were frequently reminded not to solicit. Shavitz, however, admitted that the firm did not have a written policy on solicitation and that Oliveira was not given a script to work from when calling Johnson, Kilgore, or Cook. Oliveira testified that she received a typed list of names and telephone numbers, which included those of Cook and Kilgore, from Bitner. She admitted calling Cook and Kilgore on December 15, 2007, but stated that she only did so to get information about SLG's clients' claims, and not to entice them to join the case as plaintiffs.

Following the hearing, the magistrate judge issued a report and recommendation, finding that SLG solicited Kilgore, Cook, and Johnson to join the lawsuit against Tire Kingdom. The magistrate judge found Kilgore, Cook, and Johnson credible and concluded that SLG's motive for the solicitations was pecuniary gain. The magistrate judge also found that SLG failed to train Oliveira regarding solicitation of clients.

The magistrate judge recommended the following sanctions against SLG:

1) that Shavitz Law Group be barred from representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action . . . ;
2) that Shavitz Law Group be barred from collecting any fees or costs for work performed in representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action . . . ;
3) that Shavitz Law Group be ordered to formulate and implement a formal written policy on solicitation to inform and govern the conduct of all SLG attorney and non-attorney staff;

5

4) that a copy of this Report and Recommendation and any Order adopting it be forwarded to the Florida Bar for possible future action; and

5) that Shavitz Law Group be ordered to reimburse Defendants for all reasonable fees and costs incurred in bringing and prosecuting Defendants' Motion for Sanctions.

SLG filed objections to the magistrate judge's proposed sanctions 1, 2, and 5. The district court rejected SLG's objections and adopted the report and recommendation in its entirety.

SLG appeals, arguing that the district court's sanctions are disproportionately broad and excessive in light of the brevity of the calls, the lack of evidence that the firm ratified Oliveira's solicitation of clients, and the First Amendment issues at stake.

## II. Discussion

A. Standard of Review

A court's decision to impose sanctions is reviewed for an abuse of discretion. Harris v. Chapman, 97 F.3d 499, 506 (11th Cir. 1996).

B. Sanctions 1 and 2

In its briefs to this court, SLG does not purport to challenge the magistrate judge's findings of fact, but rather only argues that sanctions 1 and 2 are disproportionately harsh and broad because the solicitation was conducted by a non-attorney and there is no evidence of attorney knowledge or ratification of the

6

solicitation. Also, SLG argues that the calls were of short duration and there is no evidence that individuals were solicited to join the lawsuit. SLG also asserts that sanction 1 is disproportionately harsh in light of SLG's First Amendment interests. In sum, SLG concedes that imposition of some sanctions was appropriate, but argues that sanctions 1, 2, and 5 are too far-reaching. SLG contends that a more appropriate sanction would permit the representation and collection of fees from plaintiffs that might opt-in in the future.[1]

"[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). A court's decision as to "whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation." Harris, 97 F.3d at 506. The Rules Regulating the Florida Bar ("Florida Rules") contain an anti-solicitation provision which mandates that "a lawyer shall not solicit professional employment from a

---

[1] SLG also argues that five current opt-in plaintiffs that were not co-workers of the named plaintiffs should be exempted from the order. In its objection to the magistrate judge's report and recommendation, however, SLG expressly stated that it "do[es] not object to all recommendations." It went on to explain that it "agreed to withdraw from representation of all [current] opt-in plaintiffs except for those who worked with the named plaintiffs." Thus, SLG has waived the right to challenge the portion of the district court's order that prohibits the representation of any current opt-in plaintiffs that were not co-workers of the named plaintiffs because SLG invited the alleged error. See Birmingham Steel Corp. v. Tenn. Valley Auth., 353 F.3d 1331, 1341 n.5 (11th Cir. 2003) (invited error precludes review). We therefore limit our review to the sanctions prohibiting representation and collection of fees for future opt-in plaintiffs.

7

prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." R. Reg. Fla. Bar 4-7.4(a). The Southern District of Florida Local Rules ("Local Rules") subject attorneys to discipline for violating the Local Rules or Florida Rules. S.D. Fla. L. R. 11.1.C. Such disciplinary measures may include disbarment, monetary sanctions, or "any other sanction the Court may deem appropriate." S.D. Fla. R. I.B.

First, it is appropriate to discuss the scope of the sanctions imposed. SLG interprets the district court's order as a categorical prohibition from SLG ever representing any plaintiff in any case against any defendant, unless the plaintiff is one of the six named plaintiffs in the instant case or was first a co-worker of one of the named plaintiffs. Although the language in the district court's order is imprecise, we find SLG's interpretation of the sanctions unreasonable. The district court expressly identified the purposes of the sanctions as "ensuring that counsel acts ethically in this litigation and . . . sanctioning The Shavitz Law Group for unethically soliciting clients." Hamm v. TBC Corp., 597 F. Supp. 2d 1338, 1340 (S.D. Fla. 2009) (emphasis added). There is no evidence indicating the district court intended for these sanctions to apply to future cases, or that the misconduct in this case would impact suits against defendants other than Tire Kingdom. We thus

8

conclude that the district court's sanctions order only limits SLG's ability to represent opt-in plaintiffs in the instant case.

Once this misconception is removed, we conclude that sanctions 1 and 2 are not disproportionately broad or excessive. The named plaintiffs in this action are from Florida, Georgia, North Carolina, and Pennsylvania. There was no evidence before the magistrate judge as to how the opt-in plaintiffs, which included individuals from Texas, Louisiana, Alabama, Ohio, Maryland, Missouri, Massachusetts, and Illinois, learned about the suit and selected SLG as counsel. Under these circumstances, it was impossible for the magistrate judge to know which, if any, of these clients had also been solicited by SLG. Thus, the magistrate judge recommended narrowly tailored sanctions to permit SLG to continue to represent the named plaintiffs and co-workers of the named plaintiffs (presumably because they most likely learned about SLG and the lawsuit from the named plaintiffs), but prohibited SLG from representing opt-in plaintiffs from other stores. These were reasonable and limited sanctions that balanced the danger that current and future opt-in clients were impermissibly solicited against SLG's interest in representing lawfully-obtained clients.[2]

---

[2] The magistrate judge expressly found that SLG failed to train Oliveira and that the firm solicited the clients for the purpose of pecuniary gain. We find it irrelevant that SLG claims that the solicitation was by a non-attorney, there was no evidence of attorney knowledge or ratification, and there were only three instances of solicitation. SLG's interpretation of the facts,

We similarly conclude that SLG's First Amendment argument is meritless. SLG argues that the sanctions in this case are too broad because under Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981), sanctions must be tailored to specific findings, rather than the "mere possibility of abuses." SLG argues that because the sanctions prohibit the representation of opt-in plaintiffs that may not have been solicited, the sanctions are impermissibly broad and abridge SLG's ability to represent legitimately-obtained clients.

We conclude that the district court's order does not violate Gulf Oil. That case dealt with a broad sanction – a "complete ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court." Id. at 94-95. The lower court in Gulf Oil did not hear any evidence, make any findings of fact, and did not write an explanatory opinion to justify this sweeping ban. Id. at 93-96. The Supreme Court found it troubling that there was no record for appellate review, and concluded that in light of the litigants' and attorneys' First Amendment interests, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential

_____

even if correct, does not necessitate the conclusion that the district court abused its discretion.

10

interference with the rights of the parties." Id. at 101.

In the instant case, an evidentiary hearing was held, the report and recommendation contained detailed factual findings, and the magistrate judge discussed the Gulf Oil opinion when determining the appropriate form of sanctions. Under these circumstances, the district court did not abuse its discretion by prohibiting SLG from representing or collecting fees from opt-in plaintiffs, other than those that were co-workers of the named plaintiffs.

## C. Sanction 5

Finally, SLG challenges the portion of the district court's order requiring SLG to pay all reasonable fees and costs incurred by Tire Kingdom in bringing and prosecuting its motion for sanctions. SLG provides no reasoning in support of this position, aside from re-stating its arguments about the lack of attorney ratification and that "such an over-broad remedy is severe." Federal Rule of Civil Procedure 11(c)(2) expressly permits a court to "award to the prevailing party [in a motion for sanctions] the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). Under the facts of this case, we do not consider the district court's imposition of this modest and statutorily-authorized sanction to amount to an abuse of discretion.

11

### III. Conclusion

For the reasons set forth, we conclude that the district court did not abuse its discretion in imposing the aforementioned sanctions against SLG.

**AFFIRMED.**