**Carol Lynn GILES, individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**ST. CHARLES HEALTH SYSTEM, INC., an Oregon corporation, doing business as Pioneer Memorial Hospital, St. Charles Medical Center–Bend, St. Charles Medical Center–Redmond, and St. Charles–Madras, Defendant.**

No.  6:13–cv–00019–AA.

United States District Court, D. Oregon.

May 9, 2013.

Roxanne L. Farra, Roxanne L. Farra, PC, Bend, OR, for Plaintiff.

Brenda K. Baumgart, John Baird Dudrey, Stoel Rives LLP, Portland, OR, for Defendant.

## ORDER

AIKEN, Chief Judge:

Plaintiff Carol Giles moves to limit defendant St. Charles Health System, Inc.'s communications with putative class members pursuant to Fed.R.Civ.P. 23(d). Plaintiff's motion is granted in part and denied in part.

Plaintiff is employed as a registered nurse at one of defendant's hospitals. Defendant obliges its hourly nurses ("caregivers"), such as plaintiff, to fulfill certain training and certification requirements, which are not necessary to maintain an Oregon nursing license, as a condition of employment. In November 2010, plaintiff informed hospital management that it was unlawful not to compensate employees for this study and test-taking time. On December 2, 2011, plaintiff filed a small claims action against defendant. On December 28, 2011, defendant agreed, in writing, to begin drafting a policy pertaining to compensation for study and test-taking time, and to pay for plaintiff's 2011 certification tests; in exchange, plaintiff dismissed her complaint without prejudice.

Plaintiff remained in contact with hospital management regarding defendant's payment practices between February 2012 and December 2012. On December 5, 2012, plaintiff notified defendant that she consulted a labor lawyer regarding these practices. On December 28, 2012, defendant issued a memorandum, entitled "Study and Test Taking Time," proposing to pay caregivers for their unpaid training time since January 1, 2011, "based on the two-year statute of limitations for overtime and premium pay actions in Oregon." Giles Decl. Ex. A ("Policy"). As a condition of payment, the caregiver must sign a "Study and Test Taking Time—Release Form," in which he or she stipulates to "hav[ing] been paid for all ... hours spent studying and taking tests for certifications" and to "release all claims against St. Charles Health System in that regard." *Id.* at Ex. C ("Release"). Additionally, caregivers were given the option to meet with defendant's human resources staff to discuss the new policy.

On January 4, 2013, plaintiff filed a complaint in this Court, alleging that defendant violated the Fair Labor Standards Act and Oregon's labor laws. On February 22, 2013, plaintiff moved for an order requiring defendant to cease communications with putative class members regarding this lawsuit, the Policy, or the Release of any potential claims; she also moved to produce any documents obtained from putative class members. Plaintiff argues that defendant's current communications are misleading because they omit any mention of this lawsuit, misrepresent the length of the statute of limitations, and fail to inform caregivers that they may be entitled to recover liquidated damages, penalty wages, and prejudgment interest in addition to their unpaid wages.

Conversely, defendant asserts that the Court's intervention is unnecessary because there is no evidence of intimidation or wrongdoing, the Release does not actually preclude caregivers from joining in plaintiff's class action, and the proposed limitations would frustrate its attempts to compensate its employees for the unpaid hours at issue, efforts which it began prior to the commencement of this lawsuit.

Because class actions present a potential for abuse, courts have both the

duty and the authority to exercise control over the action and to enter orders governing the parties' conduct. *See* Fed.R.Civ.P. 23(d); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). In the pre-certification phase, any order limiting communications between the parties and putative class members must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties"; in addition, the court's order should be "carefully drawn" and "limit ... speech as little as possible." *Gulf Oil,* 452 U.S. at 101–02, 101 S.Ct. 2193. The moving party bears of the burden of establishing "the particular abuses by which it is threatened." *Id.* at 102, 101 S.Ct. 2193.

■■ Accordingly, the defendants in a class action are generally not barred from pre-certification communications with prospective class members. *See Parks v. Eastwood Ins. Servs., Inc.,* 235 F.Supp.2d 1082, 1084 (C.D.Cal.2002); *Kerce v. W. Telemktg. Corp.,* 575 F.Supp.2d 1354, 1366 (S.D.Ga.2008). Nonetheless, a limitation on pre-certification contact is appropriate when misleading, coercive, or improper communications have taken place. *See Longcrier v. HL–A Co., Inc.,* 595 F.Supp.2d 1218, 1227 (S.D.Ala.2008) (citations omitted). There is a "heightened potential for coercion" where putative class members and the defendant are in an employer-employee relationship. *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 668 (E.D.Tex.2003) (citing *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1202 (11th Cir.1985)). However, the "inherent coerciveness in the employment relationship is insufficient, in and of itself, to warrant imposition of limitations of employers' ability to speak with potential class members prior to certification." *Longcrier,* 595 F.Supp.2d at 1227.

■ Here, while defendant provided evidence evincing that the purpose behind its contact with putative class members was not improper, the Court finds clear countervailing evidence demonstrating that the challenged communications were improper and misleading. First, even if, as defendant contends, the Release does not affect a potential class member's ability to join in this action, it leads caregivers to believe that they have been paid in full and therefore makes it less likely that they will pursue any additional amounts. Equally problematic is that defendant made payment of these wages, which it concedes are due and owing, contingent upon a signed Release, despite the fact that nothing prevents defendant from providing this compensation absent such an agreement. *See* Ough Decl. ¶¶ 3–4, 6–8; Giles Decl. ¶ 36. At least one employee reported that she is "worried [defendant] will retaliate against me" for refusing to sign the Release and/or participating in this lawsuit. *See* Ough Decl. ¶ 9.

Moreover, it is undisputed that defendant failed to provide its employees with information about this lawsuit, including the nature of plaintiff's claims, or that it is framed as a class action; caregivers were also never notified that: evidence gathered during meetings could be used in this lawsuit, the law expressly prohibits defendant from retaliating against them if they choose to join therein, they may be entitled to additional money damages, or the statute of limitations is three years where, as here, willful labor law violations are involved. *See* Giles Decl. ¶ 38.

The Court acknowledges that the requested order "will effectively [keep defendant] from paying ... wages it is prepared to pay [now], as opposed to paying them at some undetermined time in the future if [this case is certified] as a collective action and if each effected caregiver

 

consents to join suit." Def.'s Resp. to Mot. Limit Commc'ns 11 (emphasis omitted). Regardless, the omission of material information rendered defendant's communications fundamentally misleading, such that an order limiting defendant's contact with prospective class members is warranted. Additionally, to correct any inaccurate impressions resulting from the Policy, the Release, or the meetings, the Court finds that a curative notice to potential class members is appropriate. *See Mevorah v. Wells Fargo Home Mortg., Inc.,* 2005 WL 4813532, *5–6 (N.D.Cal. Nov. 17, 2005). Lastly, plaintiff's request for an order compelling defendant to produce all documents acquired from putative class members relating to this action is premature because there is no indication that she previously sought to procure these materials via discovery. *See Bermudez v. Duenas,* 936 F.2d 1064, 1068 (9th Cir.1991).

### CONCLUSION

Plaintiff's motion for an order limiting defendant's communications with putative class members (doc. 6) is GRANTED in part and DENIED in part as follows: DENIED as to plaintiff's request for production and GRANTED in all other respects. Accordingly, defendant is hereby ORDERED to have no further communications with potential class members regarding this lawsuit, the Policy, or the Release without first obtaining written permission from this Court. Moreover, the Court will issue a curative notice to potential class members explaining that signed Releases do not hinder their ability to participate in this lawsuit and that defendant cannot retaliate against them for doing so. Plaintiff's counsel shall draft a proposed curative notice for the Court's review and file it no later than 10 days from the date of this Order; defendant shall bear the cost of disseminating such notice. Finally, the

parties' requests for oral argument are DENIED as unnecessary.

IT IS SO ORDERED.