**DODONA I, LLC, on Behalf of Itself and All Others Similarly Situated, Plaintiffs,**

v.

**GOLDMAN, SACHS & CO., et al., Defendants.**

**No. 10 Civ. 07497 (VM)(DF).**

United States District Court, S.D. New York.

Signed June 2, 2014.

David Scott Frydman, Frydman LLC, Glen Bernard Lenihan, Gusrae, Kaplan, Nusbaum, PLLC, New York, NY, Arthur M. Stock, Jon Jason Lambiras, Josh Michael Rubens, Lane Lanier Vines, Lawrence Jay Lederer, Merrill G. Davidoff, Robin B. Switzenbaum, Steven Lawrence Bloch, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs.

Richard Howard Klapper, Christopher James Dunne, David Maxwell Rein, Harsh Nayan Trivedi, Jacob Eden Cohen, Jacob Michael Croke, Jessica Patricia Stokes, Maya Krugman, Michael Thomas Tomaino, Jr., Theodore Edelman, William Rudolph Arthur Kleysteuber, IV, Sullivan and Cromwell, LLP, Andrew James DeFilippis, United States Attorney Office, Brett D. Jaffe, Nathaniel P.T. Read, Lawrence Thomas Gresser, Cohen & Gresser, LLP, Barry A. Bohr-

er, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New York, NY, for Defendants.

### ORDER

DEBRA FREEMAN, United States Magistrate Judge:

Currently before the Court is an application by lead plaintiff Dodona I, LLC ("Lead Plaintiff") and the certified class (collectively, "Plaintiffs") seeking an order prohibiting Goldman, Sachs & Co., The Goldman Sachs Group, Inc., Peter L. Ostrem and Darryl K. Herrick (collectively, "Defendants") and their counsel from "communicating with class members concerning any aspect of this litigation during the pendency of this litigation and, particularly, regarding any class member's decision to remain in or opt out of the class." (Dkt. 144.) The Court has received a number of letter submissions from the parties regarding this issue. (Dkts. 144, 145, 147, 148, 150, 151.) Having reviewed the parties' submissions and considered counsels' arguments, Plaintiffs' application is granted in part, and denied in part, as set forth below.

### BACKGROUND

As set forth more fully in the Court's decision on Defendants' motion to dismiss, *see Dodona I, LLC v. Goldman, Sachs & Co., et al.*, 847 F.Supp.2d 624 (S.D.N.Y.2012), familiarity with which is assumed, this is an action on behalf of a class of investors in certain securities offerings led by Defendants. Plaintiffs allege violations of federal securities laws; common law fraud; aiding and abetting fraud; fraudulent concealment; and unjust enrichment. The class, certified by the Court on January 23, 2014, consists of more than 70 investors in collateralized debt obligations ("CDOs"), specifically Hudson Mezzanine Funding 2006–1 and Hudson Mezzanine Funding 2006–2 (together, the "Hudson CDOs"). *See Dodona I, LLC v. Goldman, Sachs & Co., et al.*, 296 F.R.D. 261, 265 (S.D.N.Y.2014).[1] Lead Plaintiff's motion for

---

1. Pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, Defendants filed a petition for

review of the Court's class certification order in the U.S. Court of Appeals for the Second Circuit

an order approving notice to class members and notice procedures is currently pending before this Court. (*See* Dkts. 155, 156, 157, 158.)

In November and December 2012, prior to class certification, Defendants subpoenaed several absent class members, as well as investment advisors who had purchased the securities on behalf of absent class members, and engaged in negotiations with certain of them regarding the scope of the subpoenas. (*See* Dkt. 144 at 1, 145 at 3.) As those who invested in the Hudson CDOs were required to be "Qualified Institutional Buyer[s]" and "sophisticated investor[s]" with "access to such financial and other information . . . necessary . . . in order to make an informed investment decision," *see Dodona I,* 847 F.Supp.2d at 648–49, many of the putative class members were large financial institutions (*see* Dkt. 144 at 2), with in-house or private outside counsel. In May 2013, Defendants' negotiations with the investment firm III Offshore Advisors ("III Offshore") and with a law firm representing Vanderbilt Capital Advisors, LLC ("Vanderbilt") resulted in Defendants' obtaining declarations from both Vanderbilt and III Offshore, stating that they had not relied on Defendants' alleged misrepresentations in connection with their investments in the Hudson CDOs. (*See* Dkt. 144 at 1–2; Dkt. 145 at 3–4; Declaration of Richard H. Klapper, Esq. dated May 15, 2013 ("Klapper Decl.") (Dkt. 120) at Ex. C, Ex. D.)

Additionally, after the class was certified, Defendants contacted the representatives of two class members to inquire as to whether they had policies regarding participation in class actions such as this one. (*See* Dkts. 150 at 1–2, 151 at 1–2.) Defendants have represented that the class members contacted at that time were Citigroup and UBS, and that "the contact consisted a single email to, and a single conversation with, counsel for each of them." (Dkt. 151, at 1–2.) Defendants have also represented that these communications took place before Plaintiffs requested an or-

der from the Court restricting communications. (*See id.*)

## DISCUSSION

### I. *FEDERAL RULE OF CIVIL PROCEDURE 23(d)*

#### A. *Applicable Legal Standard*

■ Under Rule 23(d) of Federal Rules of Civil Procedure, a district court may impose conditions on the parties and their counsel in a class action. Fed.R.Civ.P. 23(d)(1)(C); *see Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."). Courts use Rule 23(d) to limit communications to protect class members from "misleading communications from the parties or their counsel," *WorldCom, Inc. Sec. Litig.,* No. 02–3288(DLC), 2003 WL 22701241, at *8 (S.D.N.Y. Nov. 17, 2003) (citing *Erhardt v. Prudential Group,* 629 F.2d 843, 846 (2d Cir.1980)), because "[m]isleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally," *Dziennik v. Sealift, Inc.,* No. 05–4659(DLI)(MDG), 2006 WL 1455464, at *3 (E.D.N.Y. May 23, 2006) (citing *In re Sch. Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir. 1988)). The Court's authority to regulate communications under Rule 23(d) also "extends to communications that interfere with the proper administration of a class action[,] those that abuse the rights of members of the class," and situations in which "there is a relationship that is inherently coercive." *Sorrentino v. ASN Roosevelt Ctr. LLC,* 584 F.Supp.2d 529, 532–33 (E.D.N.Y.2008). "The Court's primary purpose in supervising communications is thus to ensure that potential class members receive accurate and impartial information regarding the status, purposes

on February 7, 2014. *See Dodona I, LLC v. Goldman, Sachs & Co., et al.,* No. 14–419 (2d Cir. Feb. 7, 2014). Plaintiffs filed an opposition on February 18, 2014, and the Court of Appeals heard arguments on the issue on April 23, 2014. *Id.* The petition is still pending at the time of this Order.

and effects of the class action." *Hinds Cnty., Miss. v. Wachovia Bank N.A.,* 790 F.Supp.2d 125, 134 (S.D.N.Y.2011).

In their opposition letters, Defendants rely on the standard set out by the Supreme Court in *Gulf Oil* (*see* Dkt. 145 at 3, 148 at 2), *i.e.,* that orders restricting communications with putative class members must be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," and should be "carefully drawn" to "limit[ ] speech as little as possible, consistent with the rights of the parties under the circumstances." 452 U.S. at 101–02, 101 S.Ct. 2193. *Gulf Oil* concerned the *plaintiffs'* communications with putative class members, and while a majority of courts that have examined this issue have extended the reasoning to cover *defendants'* communications with putative and current class members, as well, *see, e.g., Ralph Oldsmobile, Inc. v. Gen. Motors Corp.,* No. 99–4567(AGS), 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 29, 2001), *Austen v. Catterton Partners V, LP,* 831 F.Supp.2d 559, 567 (D.Conn.2011), *Sch. Asbestos Litig.,* 842 F.2d at 683, at least one court in this district has found a distinction, *see Currency Conversion Fee Antitrust Litig.,* 361 F.Supp.2d 237, 253–54 (S.D.N.Y. 2005) (finding that defendants' reliance on *Gulf Oil* was "misplaced" because it only applied to "restrictions imposed by the trial court on *plaintiffs'* counsel's communications with putative class members" (emphasis in original)), *amended on other grounds,* 2005 WL 1871012 (S.D.N.Y. Aug. 9, 2005).

Any such distinction would not be meaningful here, however, as this Court would deny Plaintiffs' application under Rule 23(d), regardless of whether that application were considered under the strict standard set forth by *Gulf Oil* or simply as a matter within the Court's discretion to further the policies embodied in Rule 23, as suggested by *Currency Conversion.*

**B. *Application of Rule 23(d)***

█ Plaintiffs argue that "Defendants are specifically prohibited from influencing a class member's decision to opt out of the class" and request that the Court prohibit

"communications relating to this case" due to the "factual circumstances here." (*See* Dkt. 144 at 3–4.) According to Plaintiffs, the circumstances that warrant such relief are: (1) the fact that Defendants have already had certain communications with class members and (2) the "fact that some class members are large financial institutions with whom one or more Defendants may have ongoing business relationships and communications unrelated to this litigation." (*Id.* at 1–2; *see also* Dkts. 147 at 1–3, 150 at 1–2.)

**1. *Defendants' Prior Communications with Class Members***

In support of the proposition that Defendants' prior communications with class members were improper and should influence the Court to enter an order under Rule 23(d) prohibiting future communications, Plaintiffs cite a number of cases (*see* Dkts. 144 at 4, 150 at 3), but these cases differ significantly from this one.

First, many of the cases cited by Plaintiffs focus on the fact that defendants had given misleading information to class members to influence them to opt out of the class or otherwise take advantage of their vulnerability. *See, e.g., Romano v. SLS Residential Inc.,* 253 F.R.D. 292, 297–99 (S.D.N.Y.2008) (finding that defendants "sought to capitalize on the potential plaintiffs' vulnerability and discourage them from participating in the lawsuit" by "relat[ing] false and misleading information to putative class members about the consequences of their participation in th[e] lawsuit"); *Tedesco v. Mishkin,* 629 F.Supp. 1474, 1478–84 (S.D.N.Y.1986) (restraining defendant from "communicating with class members so as to discourage their participation in this action or to induce class members to 'opt out' of the class" where defendant sent letter to class members that was coercive and "materially false and misleading"); *In re Sch. Asbestos Litig.,* 842 F.2d 671, 683 (3d Cir.1988) (finding Rule 23 applies to communications that seek or threaten to influence the choice of remedies where defendants sent class members a booklet that was "misleading as to its objectivity and neutrality"). Yet, here, Plaintiffs offer no evidence supporting a claim that

Defendants have made any misleading statements to the class members they contacted.

Second, Plaintiffs cite cases involving circumstances where, as a result of the class members' vulnerability, the defendants' contact with them had an inherent potential for abuse and coercion. (*See* Dkts. 144 at 4, 147 at 3, n. 1 (citing, *e.g.*, *Zamboni v. Pepe W. 48th St. LLC*, No. 12–3157(AJN)(JCF), 2013 WL 978935, at *3 (S.D.N.Y. Mar. 12, 2013) (noting that "courts have a responsibility to restrict communications that are potentially coercive" and finding that "it was inherently coercive for the defendants to solicit from each employee a statement that he does not have a claim for unpaid wages"); *Castillo v. Hernandez*, No. 10–247, 2011 WL 1528762, at *4 (W.D.Tex. Apr. 20, 2011) ("restricting [d]efendants contacts relating to the subject matter of [the] lawsuit" where defendant sent a letter that was either "a pretext to inquire into [p]laintiffs' immigration status or [used] to indicate to [p]laintiffs that their immigration status could and would be used as leverage against them in th[e] case")).) The circumstances of this case, which do not involve such an evident imbalance of power, do not bear the same obvious potential for coercion.

Rather, in this case, it is difficult to see how Defendants' communications with sophisticated, institutional class members, especially communications made through their counsel, would create any risk of actual abuse. For example, while Plaintiffs suggest that Vanderbilt's refusal to accept an edit to the declaration proposed by Defendants shows an improper attempt by Defendant to mislead and influence (*see* Dkt. 147 at 1; 144 at 2, 150 at 2), this actually suggests to the Court that Vanderbilt's attorneys carefully read the draft declaration and made changes as diligent legal representatives of Vanderbilt. Thus, the very example of supposed impropriety offered by Plaintiffs serves to lessen the Court's concerns about the possibility that class members would be coerced or misled by Defendants. The Court also notes that the only post-certification communications between Defendants' counsel and class members (Citigroup and UBS, in particular) were apparently directed to those class members' attorneys, who were presumably able to advise their clients regarding their rights and interests in a class action like this one. On this record, it appears that the risk of misinformation, coercion and abuse is very low.

### 2. *Defendants' Business Relationships with Class Members*

As noted above, Plaintiffs also argue that an order prohibiting communications is necessary because of Defendants' potential "ongoing business relationships" with certain class members. (Dkt. 144 at 2; *see also* Dkt. 147 at 1; Dkt. 150 at 2.) Once again, however, the cases cited by Plaintiffs to support their argument presented circumstances that were quite different than those presented here, in that the class members in those cases were again vulnerable, as well as very reliant on the business relationship with the Defendants. *See, e.g.*, *Urtubia v. B.A. Victory Corp.*, 857 F.Supp.2d 476, 485 (S.D.N.Y. 2012) (finding enough potential for abuse to warrant a limited restriction on defendant's right to communicate with putative class members where defendant was the employer of a class consisting of "any waiter, runner, busser and dishwasher who performed any services for the . . . [r]estaurant"); *Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d at 253 (finding potential for coercion where "the potential class consisted of cardholders who depend on defendants for their credit needs"); *Ralph Oldsmobile*, 2001 WL 1035132, at *4 (finding potential for coercion where "the potential class members[, car dealers,] depend upon the defendant [General Motors] for information, supplies, and credit"); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir.1985) (finding communications were likely coercive based on business relationship where the "class consisted of Bank borrowers, many of whom were dependent on the [defendant] Bank for future financing" and "bank customers affected by the litigation included those who anticipated seeking . . . discretionary financial indulgence[s] from their loan officers, and who did not have convenient access to other credit sources"); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D.Tex.1994) (finding po-

tential for coercion where defendant was wholesaler, and class members were hardware stores who "necessarily rel[ied] upon the defendant for dissemination of factual information regarding hardware goods and for lower prices in purchasing those goods").

In contrast, Plaintiffs have offered no evidence to support an inference that the class members in this action are personally or particularly reliant on Defendants for services that they are unable to obtain elsewhere. Simply stating that some class members may have ongoing business relationships with Defendants, without explaining the basis for any concern that such relationships could render the class members vulnerable to abuse, is not enough.

Accordingly, this Court finds that, based on the present record, there is nothing to justify an order under Rule 23(d), restricting communications regarding the litigation between Defendants and class members. Nonetheless, as discussed below, a more limited order, directed specifically at Defendants' counsel, would be warranted under the attorney rules of professional conduct.

## II. *NEW YORK RULE OF PROFESSIONAL CONDUCT 4.2(A)*

### A. *Applicable Legal Standard*

Under New York Rule of Professional Conduct 4.2(a), "a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0(2013).

There is some disagreement among courts as to when, for purposes of this rule, the attorney-client relationship between class counsel and class members begins: at the time of class certification, or after the opt-out period has ended. The majority of courts, including at least one court in this district, have found that class certification itself creates an attorney-client relationship, at least "for the limited purpose of aiding prospective class members in deciding whether or not to join in the class action." *Tedesco v. Mishkin,*

629 F.Supp. 1474, 1483 (S.D.N.Y.1986) (citation and internal quotation marks omitted); *see also Gortat v. Capala Bros., Inc.,* No. 07–3629(ILG)(SMG), 2010 WL 1879922, at *3 (E.D.N.Y. May 10, 2010) ("class certification gives rise to an attorney-client relationship between potential class members and class counsel"), *aff'd,* 2010 WL 3417847 (E.D.N.Y. Aug. 27, 2010); *Brown v. Mustang Sally's Spirits and Grill, Inc.,* No. 12–529S (WMS), 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012); *but see* ABA Formal Op. 07–445 (Apr. 11, 2007) (opining that attorney-client relationship does not begin until after the expiration of the opt-out period); *Bobryk v. Durand Glass Mfg. Co., Inc.,* No. 12–5360(NLH)(JS), 2013 WL 5574504, at *9 (D.N.J. Oct. 9, 2013).

### B. *Application of Rule 4.2(a)*

Plaintiffs argue that, under New York Rule of Professional Conduct 4.2(a), once a class is certified, "defendants should communicate with members of a certified class regarding the litigation only through class counsel." (Dkt. 144 at 2.) In response, Defendants argue that this rule does not apply to communication with class members' in-house or private counsel (Dkt. 145 at 2), and that an attorney-client relationship does not begin until after the opt-out period expires (*id.* at 4).

Given that, since the date of class certification in this case, Defendants' counsel have only contacted class members through the class members' attorneys (even if not class counsel), the risk "that Rule 4.2 was designed to prevent[,] obtaining a tactical advantage by knowingly contacting a represented party without notifying her lawyer," *Velez v. Novartis Pharm. Corp.,* No. 04–9194(CM), 2010 WL 339098, at *3 (S.D.N.Y. Jan. 26, 2010), is attenuated in this case, *see, e.g.,* NYC Bar Comm. On Prof. and Jud. Ethics, Formal Op. 2007–1 (noting that "[t]he principal purposes of the Rule are to prevent a lawyer from taking advantage of a non-lawyer who is represented by counsel ... and to preserve the attorney-client relationship once it has been established ...[;] [t]hese purposes are at best attenuated when the recipient of the communication is a lawyer, and is acting as

such."); ABA Formal Opinion 06–443 (noting that "[t]he purpose of Rule 4.2 is to prevent a skilled advocate from taking advantage of a non-lawyer" but "[w]hen communications are lawyer-to-lawyer, it is not likely that the inside counsel would inadvertently make harmful disclosures").

Indeed, Plaintiffs have not shown that Defendants have gained any improper tactical advantage over class members by Defendants' counsel's communications, to date, with class members' in-house or private attorneys, who are presumably sophisticated and familiar with securities litigation. The Court also perceives little risk of Defendants obtaining an unfair advantage if communications similarly directed to class members' attorneys are permitted, going forward, even during the opt-in period. Even if, by virtue of the class-certification decision, all class members should already be viewed as being in an attorney-client relationship with class counsel, the concerns the underlying rule is intended to address are obviated by the fact that, since that decision, Defendants have apparently been willing to direct their communications to attorneys, acting in a representative capacity.

Under the circumstances, the Court will restrict Defendants' counsel's conduct under Rule 4.2(a), going forward, only to what Defendants already seem prepared to do—that is, to limit their counsel's communications to attorneys for the class members, whether those attorneys are serving in this action as class counsel or are otherwise serving the class members in a representative capacity. Of course, such attorneys would always be free to direct Defendants' counsel's inquiries to class counsel instead, if desired. The Court finds it unnecessary to impose any more stringent restriction, in the absence of any showing that Defendants' counsel has acted in a manner that is misleading, coercive, or abusive.

### CONCLUSION

For the reasons above, it is hereby ORDERED that Plaintiffs' request for an order prohibiting Defendants from communicating with class members concerning any aspect of this litigation during the pendency of this litigation (Dkt. 144) is denied, except that Defendants' counsel is directed to restrict their communications with class members to attorneys serving those class members in a representative capacity.

SO ORDERED.